671 P.2d 404

**JAMES P. PAUL WATER COMPANY, an Arizona corporation, Plaintiff-Appellant,**

v.

**ARIZONA CORPORATION COMMISSION, an Administrative Agency of the State of Arizona, Defendant-Appellee,**

and

**Pinnacle Paradise Water Company, Intervenor-Appellee.**

**No. 16383–PR.**

Supreme Court of Arizona, In Banc.

Oct. 13, 1983.

Burch & Cracchiolo, P.A. by Arda S. Rutherford, Frank Haze Burch, Edwin C. Bull, Phoenix, for plaintiff-appellant.

Robert K. Corbin, Atty. Gen. by Thomas Prose, Lynwood J. Evans, Asst. Attys. Gen., Phoenix, for defendant-appellee.

Wright & Cluff by Lawrence C. Wright, David H. Cluff, Mesa, for intervenor-appellee.

GORDON, Vice Chief Justice:

The question before the Court is as follows: when may the Arizona Corporation Commission ("Commission") delete a portion of the area encompassed in a water company's certificate of convenience and necessity? Though we approve the Court of Appeals' disposition of this case, we granted review in order to examine and settle the law in this state on this question.

The issue arises in the following context. In 1969 or 1970, the Commission granted a

certificate of convenience and necessity to plaintiff-appellant James P. Paul Water Company ("Paul"). This certificate gave Paul the exclusive right to supply domestic water to several sections of relatively undeveloped land in the area of Pinnacle Peak Road and Hayden Road in Maricopa County, Arizona, including the approximately 240 acres at issue in this case ("subject property").

On August 31, 1977, appellee-intervenor, Pinnacle Paradise Water Company ("Pinnacle"), holder of a certificate of convenience and necessity to supply domestic water to an area adjacent to the subject property, filed a petition with the Commission asking it to delete the subject property from the certificate held by Paul and include it in the certificate held by Pinnacle.

In response to this petition, the Commission ordered Paul to appear and show cause why the requested deletion should not be granted. Hearings were held on December 9, 1976. The Commission granted Pinnacle's request.

On April 4, 1977, having been denied a rehearing, Paul filed a complaint in the Superior Court of Maricopa County seeking to set aside the Commission's order. Pinnacle, the real party in interest, was allowed to intervene. On October 9, 1979, the Superior Court upheld the Commission's order. On October 12, 1982, the Court of Appeals reversed the Superior Court. The Court of Appeals denied Pinnacle's motion for rehearing on January 5, 1983. We granted Pinnacle's petition for review in order to supplement the Court of Appeal's discussion of *Application of Trico Electric Cooperative, Inc.,* 92 Ariz. 373, 377 P.2d 309 (1962),

and *Davis v. Corporation Commission,* 96 Ariz. 215, 393 P.2d 909 (1964). Jurisdiction is found pursuant to the Ariz. Const. art. 6, § 5(3) and Ariz.R.Civ.App.P. 23.

In *Trico,* appellant Trico Electric Cooperative, Inc. ("Trico") and Tucson Gas Electric Light & Power Company ("TGE") held certificates of convenience and necessity for adjacent areas. Because the certificates did not define the boundaries of the areas, Trico asked the Commission for a clear delineation of the area it was certified to serve. TGE simultaneously sought to serve part of Trico's area. The Commission granted Tucson's request without providing appropriate notice and other procedural requirements.[1] Upon a writ of mandamus, this Court reversed the Commission because

> "[t]he Commission was under duty to prohibit a [non-certificated] private utility under its jurisdiction from competing in that area, [certificated to another private utility], unless, after notice and an opportunity to be heard, it shall have been made to appear that [the certificate holder] failed or refused to render satisfactory and adequate service therein, at reasonable rates."

92 Ariz. at 387, 377 P.2d at 319.[2]

It is this standard which is at the core of this controversy. Paul says the Commission failed to apply this standard and that its failure to do so was improper. The Court of Appeals agreed. Pinnacle, on the other hand, argues that the *Trico* standard is inapplicable for two reasons. It asserts that the *Trico* standard has been supplanted by *Davis, supra,* and that even if *Trico* has not been displaced, the facts of *Trico* distin-

---

1. Paul argues, as did Trico, that it was denied adequate due process by the Commission. We will not address that argument because it was not considered below and it is not necessary for disposition here. We do, however, want to make clear that before a certificate holder's certificate of convenience and necessity can be amended, due process requires that the holder be given notice and an opportunity to contest a proposed amendment.

2. A.R.S. § 40–252 provides in pertinent part, that:

> "The commission may at any time, upon notice to the corporation affected, and after opportunity to be heard as upon a complaint, rescind, alter or amend any order or decision made by it."

The Commission's authority to grant a certificate of convenience and necessity is controlled by the public interest, A.R.S. § 40–282(C). Therefore its authority to delete and reassign a parcel of land is controlled by the same because reassignment is equivalent to granting a certificate anew.

guish it from the present case. We find no merit to these assertions.

▋ In *Davis, supra,* the Commission deleted a substantial area from Davis Water Company's certificate of convenience and necessity and certified a competing water company to supply water thereon. In upholding the Commission's decision we stated that

> "[t]he monopoly is tolerated only because it is to be subject to vigilant and continuous regulation by the Corporation Commission and is subject to rescission, alteration or amendment at any time upon proper service when the *public interest* would be served by such action." (Emphasis added.)

*Davis,* 96 Ariz. at 218, 393 P.2d at 911. Pinnacle correctly notes that the public interest is the controlling factor in decisions concerning service of water by water companies. *Arizona Corporation Commission v. Tucson Ins. & Bond Agency,* 3 Ariz.App. 458, 415 P.2d 472 (1966). However, its assertion that this represents a departure from *Trico* is incorrect. *Davis* does not establish a new standard. Instead, it states the rationale which underlies our holding in *Trico.*

In *Trico* we said a certificate holder was entitled to an opportunity to provide adequate service at a reasonable rate before a portion of its certificate could be deleted. A certificate holder is entitled to that opportunity because providing it with that opportunity serves the public interest. This is necessarily the case in light of Arizona's public policy with respect to public service corporations.

▋ It is well established that Arizona's public policy respecting public service corporations, such as water companies, is one of regulated monopoly over free-wheeling competition. *Corporation Commission of Arizona v. People's Freight Line, Inc.,* 41 Ariz. 158, 16 P.2d 420 (1932); *Tucson Insurance and Bonding Agency, supra.* Under

this system, the Commission is statutorily required to investigate all applicants for a certificate of convenience and necessity for a given area, *see* A.R.S. §§ 40-281 to 285, and to issue a certificate only upon a showing that the issuance to a particular applicant would serve the public interest. *Pacific Greyhound Lines v. Sun Valley Bus Lines,* 70 Ariz. 65, 216 P.2d 404 (1950). Once granted, the certificate confers upon its holder an exclusive right to provide the relevant service for as long as the grantee can provide adequate service at a reasonable rate. If a certificate of convenience and necessity within our system of regulated monopoly means anything, it means that its holder has the right to an opportunity to adequately provide the service it was certified to provide. Only upon a showing that a certificate holder, presented with a demand for service which is reasonable in light of projected need, has failed to supply such service at a reasonable cost to customers, can the Commission alter its certificate. Only then would it be in the public interest to do so.[3] A system which did not provide certificate holders with an opportunity to provide adequate service at reasonable rates before deletion of a certificated area could be made would be antithetical to the public interest for several reasons. First, it would encourage price competition between public service corporations, the very mode of operation which the Legislature has rejected. Second, it encourages over-extensive development. In order to ensure that they will be able to supply service as the need arises, certificate holders will feel compelled to construct facilities before facilities are needed. The consuming public will ultimately pay for this needless construction which may, given the rate of technological development, prove to be obsolete by the time it is needed. Third, it fails to reward a public service corporation for taking on the risks and obligations concommittant to certification. Once certified to supply

---

**3.** In its order, the Commission implies that its initial grant of the certificate of convenience and necessity to Paul for the subject area was inappropriate because it was granted before there was "public need and necessity for that certificate." Though this may help to explain the Commission's treatment of this case, it does not justify the Commission's decision.

water to a parcel of land, a water company must comply with orders and regulations promulgated by the Commission in the public interest, see A.R.S. §§ 40–321 to 322, 331 to 332, 336, 338. Though these orders and regulations may mandate installation of additional facilities, A.R.S. § 40–331 or safety devices, A.R.S. § 40–336, and reduce expected profits, the certificate holder is required to comply. Finally, it discourages service by companies that would supply service to sparsely populated areas today, at a marginal profit, if they could be assured of an opportunity to provide extensive, more profitable service when such service was needed.

Pinnacle cites *Arizona Corporation Commission v. Arizona Water Co.,* 111 Ariz. 74, 523 P.2d 505 (1974) in support of its argument that the public interest test supplants the *Trico* standard. In *Arizona Water Co.,* two water companies had applied for a certificate of convenience and necessity to supply water to a half section of land undergoing residential development. Arizona Water Company, which was distributing water on all sides of the subject area at the time the applications were filed, was granted the certificate. On rehearing, the Commission rescinded that certificate and gave it to Arizona Water Company's competitor. The trial court vacated the Commission's certificate to the competitor. The Court of Appeals affirmed. On appeal of that decision, this Court affirmed the superior court based on our finding that the

> "evidence that the public interest would best be served by certification of [the competitor] in place of the Arizona Water Company is insubstantial as opposed to the evidence offered by the Arizona Water Company and, therefore * * * the record clearly supports the Superior Court's conclusions."

*Arizona Water Co.,* 111 Ariz. at 77, 523 P.2d at 508.

■ *Arizona Water Co.* is distinguishable because it presented a challenge to the Commission's *initial* grant of a certificate of convenience and necessity. Where a request for a certificate of convenience and necessity is made in the first instance, the public interest is determined by comparing the capabilities and qualifications of competitors vying for the exclusive right to provide the relevant service. The amounts of time and money competitors must spend (at the consumers' ultimate expense) to provide service become primary determinants of the public interest. But the instant case did not involve a request for certification in the first instance. Instead, it involved a request for a deletion in a certificate issued some seven years earlier. Where a public service corporation holds a certificate for a given area, the public interest requires that that corporation be allowed to retain its certificate until it is unable or unwilling to provide needed service at a reasonable rate.

Pinnacle's second argument, that *Trico* and the instant case are distinguishable on the facts, is also without merit. The fact that Trico had made a substantial investment in, and had been supplying needed services to, its certificated area, whereas Paul, in the instant case, had done neither is irrelevant.[4] In both cases the certificate holder had a right to provide service to its certificated area until the Commission was shown that the certificate holder was unable or unwilling to provide adequate service at a reasonable rate. In *Trico* and in the instant case, the Commission erred when it failed to respect that right.

■ In the instant case, the Commission did not address Paul's ability or willingness to provide the service Valley Investors claimed their development would need. Instead, the Commission compared Paul's and

4. It appears that Paul was not providing service because no demand for service had been made upon it by North Valley Investers, the company which had plans to develop the subject property. The fact that Jerry Nelson, sole owner of Pinnacle, had a 50% interest in North Valley Investers, might explain this failure to make a demand. The record shows that one month before the hearing, North Valley Investers informed Paul of anticipated water needs. Paul's subsequent request for engineering plans and speculations to verify the expected needs was unanswered.

Pinnacle's existing facilities.[5] In doing so, the Commission treated Paul and Pinnacle as two equally situated water companies, competing for the right to serve an uncertificated area. This was inappropriate. Paul, as holder of a certificate of convenience and necessity for the subject area, was entitled to more than a showing that Pinnacle could, from its present facilities, provide service to the subject area more cheaply than Paul could. The Commission failed to acknowledge any prior right of a certificate holder to provide service upon demand. This was beyond the scope of its authority in light of *Trico* and *Davis*. Treating cost as determinative of the public interest, the Commission lost sight of its obligation to respect Paul's expectation, as a certificate holder, of an opportunity to provide service as needed.

Because there was no evidentiary showing that Paul was unable or unwilling to provide service at reasonable rates the Commission was without legal authority to amend Paul's certificate as it did. The opinion of the Court of Appeals is approved as modified by this opinion.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.

---

5. The Commission found that Paul had not yet built facilities in the subject area and that Paul had "no apparent ability to provide service thereto", whereas Pinnacle had "facilities and [a] water plant highly developed in an area contiguous to the area in question * * * [that] could be extended into the area in question at relatively low cost." We find that "no apparent ability" is insufficient to justify the granted deletion.